*151
 
 Locke, Judge,
 

 delivered the opinion of the Court:
 

 The decision of the question in this case, depends entirely upon the construction of the several acts of Assembly, relative to the estates of deceased persons, and it will be necessary to review those acts. By those act of 1766, ch. 3, the personal estate of an intestate, is directed to be distributed as follows, “one third part to the wife of the intestate, and all the rest in equal portions to and among the children of such person dying intestate, and such person as legally represent such children, in case any of the said children be then dead, other than such child or children (not being heir at law) who shall have any estate by settlement of the intestate, or shall be advanced by the intestate in his life-time, by portion or portions equal to the share which shall by such distribution be allotted to the other children, to whom such distribution is to be made. And in case any child (other than the heir at law) who shall have any estate by settlement from the intestate, or shall be advanced by the said intestate in his life-time, by portion not equal to the share which shall be due to the other children by such distribution aforesaid, then so much of the surplus of the estate of such intestate to be distributed to such child or children as shall have any lands by settlement from the intestate or were advanced in the life-time of the intestate, as shall make the estate of all the said children to be equal as near as can be estimated $ but the heir at law, notwithstanding any land that he shall have by descent or otherwise from the intestate, is to have an equal part in the distribution with the rest of the children, without any consideration of the value of tiie land which he hath by descent or otherwise from the intestate.” Tins being the first act passed on the subject, and the only one which seems to blend the real and personal estates together, (with the exception of the heir at law,) it is necessary to enquire, 1st, whether the subsequent acts directing the distribution of
 
 *152
 
 personal and the descent of real estates, have not repealed all the provisions of this act ? and 2dly, whether, if they .have not, all the children being by subsequent acts entitled to an equal share of the land, do not fall within the exception of the act of 1766, being all heirs, and entitled in equal portions to the land to which the eldest son succeeded previous to the act of 1784, ch. 22 ?
 

 Ry this last mentioned act, the land is made to descend to all the sons equally, and if there be no sons, to all the daughters, to be divided among them equally, share and share alike
 
 $
 
 with a proviso, that if any child shall have lands settled on him or her in the life-time of the parent, then he or she shall have only as much land as will make his or her share equal. The eighth clause of the act provides, that in case a widow shall dissent from her husband’s will, she shall be entitled to one third part of the land by way of dower during life j and that if her husband die leaving no child, or not more than two, she shall be entitled to one-third part of
 
 the
 
 personal
 
 estate;
 
 but if more than two children, she shall be entitled to a child’s part only. It is to be remarked that this act makes special provision for the division of the real estate, and directs how a child advanced in the life-time of the parent in lands shall be bound to bring* the land into Hotch-pot, before he shall be entitled to any share of the land descended. Now, suppose in the year 1785, a husband died intestate, leaving two sons and two daughters, and one of his sons had been advanced in the life-time of the father with a portion of land not equal to a full share.
 
 Immediately
 
 on the death of the father, the sons would be entitled to have the lands divided, and a share in severalty alloted to
 
 each;
 
 but the daughters and sons could have no claim for distribution of the personal estate for two years after the death of the father. The son advanced, prays to have a divi-visioti of the land, his brothers admit that he is entitled to some additional quantity, hut say he has been ad
 
 *153
 
 vanced, and is entitled only to so much as when added to his advancement will give him a full share. He must necessarily admit the fact, and content himself with this additional quantity. The lands are divided accordingly, the report of the commissioners returned to Court, recorded and registered. Each son has then an estate in severalty, and such as cannot be changed, the division and re« turn operating in the nature of a conveyance. Two years afterwards, the same son petitions for his share of the personal estate, and the daughters say, he has been advanced in land, during the life of the father, and under the act of 1766, he must bring the value of this land into Hotchpot. The son answers, that he has already brought them in with his brothers in the division of the real estate under the act of 1784, as lie was bound to do by the express provisions of that act. This answer would not avail him, if the act of 1766, be in force, for the daughters portions are not increased or diminished by the division among the
 
 sons;
 
 and the consequence is, that the son would have to account twice for his advancement. What rule of Justice or Equity would comr pel the son advanced, to bring his land into account irj. the division of the personalty, after the passage of the act of 1784 ? He has not a cent in value of the real estate more than-his brother who has not been advanced. They are on an equal footing, and yet, according to the doctrine contended for, the brother advanced, must bring his advancement into account with the sisters, while the brother who has not been advanced, but who has an estate equally valuable • by descent, shall be exempt from the claim of the sisters. The act of 1784 must be considered as repealing the act of 1766, so far as respects lands by advancement $ the Legislature in 1766, viewing the real and personal estates as one joint fund, and in 1784, viewing them as separate and distinct fluids, and pointing out the mode of division in each,
 

 
 *154
 
 Let us now examine the subsequent acts, and see how far they support or contradict this construction. In 1792, tiie Legislature declared, that “ where any person shall die intestate, who had in his or her life-time given to, or put in possession of any of his or her children, any
 
 personal
 
 property, of what nature or kind soever, such child or children possessed as aforesaid, shall cause to be given t.o the administrator or manager of such estate, an inventory on oath, setting forth therein the particulars by him or her received of the intestate in his or her life-time.” The third clause^of the act provides, that if he or she refuse to give an inventory as aforesaid, he or she shall be presumed to have received a full .share.” This act confirms the construction given to the act of 1784. The inventory required to be given, respects the personal property only $ not a word being used, having reference to any advancement of land. When we consider, that the evident design of this act was to enable Hie executor or administrator to make an equal distribution of the estate, by being furnished with a list of the articles received by each child, it would seem strange, if the Legislature did not consider the act of 1766 to be repealed as to advancement of land, that they should not have required an inventory of the real estate also to be returned. The one is as necessary as the other, to enable the administrator to make distribution. But if the act of 1784, be considered as repealing the act of 1766, on this point, such a'provision was wholly unnecessary in the act of 1792, and very properly omitted. But it is said, that ad vancements of land being by deed, the administrator could easily ascertain by the register’s books, what lands the father bad given to a child, that no such evidence could be procured with regard to the personal property, and therefore the Legislature only required the inventory as to the personal. This reason is not satisfactory. The object of the act was, to relieve the administrator from the trouble of
 
 *155
 
 searching after evidence, by compelling the person who best knew the fact, to disclose it, or be precluded from a share. And if this was the object, why not extend it to the land? Why. put the administrator to the trouble and expense of searching the records, if the same plain, easy mode could be adopted with regard to the lands, which was provided as to the personal property ? As the Legislature have not prescribed such a mode, it is conclusive that they never intended advancements of land to be taken into account in the distribution of the personal property. But it is not correct to say, that in any instance, the administrator could discover from the records what lands had been given by way of advancement. It is common for a father who is about to advance his son, to purchase lands for him and to have the deeds made by the vendor directly
 
 to him.
 
 In all such cases, the administrator could not. be informed by the deeds, that the lands were given by the father. He would be subjected to the same trouble in proving this fact, that he was exposed to, as to advancements of personal property, before the act of 1792. Itcannot be presumed, that the Legislature intending to relieve him from this trouble, would take into view only the personal estate, and leave the real unprovided for.
 

 The act of 1791, providing for a widow who dissents from her husband’s will, view's the real and personal estates as separate and distinct funds. By the act of 1784, the widow, in case of intestacy, is entitled to a child’s part, and if one of the children could compel a brother or sister to bring lands, advanced to him or her in the life-time of the father, into account in the division of the personal property, so can the mother
 
 •,
 
 for the act of 1791, places her, after her dissent from her husband’s will, in the same situation as if the husband had died intestate. The fourth clause of this act directs the Jury to enquire whether, by the will, the widow is as conveniently and comfortably provided for as if her
 
 *156
 
 dower were allotted to her according to the act of 1784 ; and if so, she is precluded from any further claim upon her husband’s land. The fifth clause directs how her sjmr(. jn the personal property is to be laid
 
 off;
 
 that the same Jury shall enquire,
 
 “
 
 whether the legacy or legacies given to her by the will is, or are, equal in value to the distributive, share she,would take under the act of 1784
 
 ;
 
 and if equal, she shall be content, but if not, the deficiency to be assessed, and judgment granted for the same against the administrator, &c.” What was her share under the act of 1784 ? One-third of the real, and a child’s part of the personal estate. So that this act evidently precludes the widow from any share of the land advanced, and yet gives her precisely such share as_ a child would get. Hence it must follow, that the child shall not take any share of the advanced lands, in the division of the personal property. The Legislature, in the act of 1791, seems desirous to express themselves in language which cannot be
 
 misconstrued;
 
 they do not say that the widow shall have such deficiency made up, so as to give her a full share of the husband’s estate ; but expressly refer to the act of 1784, to ascertain what shall-be her share, the very act which compelled the advancement in land to be brought into account in the division of the real estate, and the very act which we think repealed that provision in the act of 1776. It is also worthy of remark, that in the year 1766, there was no division of land to be made,* the eldest sou took the whole. But when, by the act of 1784, all the brothers took, there wore persons between whom the land was‘to be divided ; and there the Legislature direct the child advanced, to bring such advancement into account in the division of the real estate; whereas, before that time, the advancement could, be taken into account, only in the division of the personal estate. If the act of 1791, refers expressly to the act of 1784, to ascertain what shall be the share of the widow, and that act expressly
 
 *157
 
 gives her one-third of the rea], and a child’s part only of the personal estate, it must necessarily follow, that a child can have no more than a share of the personal pro
 
 perty;
 
 excluding altogether advancements in land from the personal property.
 

 In the next place, we are of opinion, that if the act of 1784, should not be construed as repealing tlie act of 1776, so far as respects advancements in land, yet that the land, now in question, is not liable to be brought into account. By the act of 1766, the heir at law is expressly excepted. The act of 1784, makes all the brothers, heirs ; not, indeed, by reducing the situation of the eldest son to a level with the younger ones, but by raising the latter to the .level of the former. And as the eldest son, by the act of 1766, is exempted from the operation of the clause respecting advancements, so are
 
 all
 
 the sons by the act of 1784. By the act of 1795, the daughters are raised to the.level of the sons, and entitled to inherit, equally, with them. So that, since that act,
 
 all the children
 
 compose the same heir, which the eldest son did under the act of 1776, and, consequently, are all within.the exception. It has been said, that the heir at law, means the heir at common law, and that since the acts of 1784 and 1795, thére is no such person known to our law. The term, “
 
 Heir at Law,”
 
 means the person or persons on whom lands descend according to the law of the State, or Kingdom, in which they áre situate, and in our law, means
 
 all the children
 
 of a deceased person. On this ground, also, we are of opinion, that the land advanced, ought not to be taken into account in a division of the personal property.
 

 Tayxoii, Chief-Justice,
 

 contra. — It was the policy of the common law, resulting from the feudal system, to fa-vour the eldest son as heir at law, both by giving him all the lands where the ancestor died intestate, and by requiring an,.cxpress devise of the estate over to another,
 
 *158
 
 , in order to disinherit him. Hence the innumerable ca* ses to bo found in the books on the construction of wills, and the frequent confirmation of the rule that the claim of the heir at law, shall not be defeated but by necessary implication.
 

 With respect to personal property, a different policy operated, and the natural and just principle, that it should be divided amongst thp intestate’s nearest of kindred, in equal degree, prevailed over the artificial one, which had been applied to real estates. In this spirit, the British statute of distributions was passed, (from which our act of 1766, is nearly a transcript,) guarding with systematic anxiety the right of primogeniture, as to land, and dispensing, with the bounty of nature, the chattels amongst the relations of the deceased. Under these acts, the heir at law, claiming distribution of the personal property, shall have an equal share, without any regard to the land that may have been settled upon him in his father’s life-time ; because, as he would have had all the land upon his father’s death intestate, by the previous appointment of the law, such advancement was only anticipating the time of enjoyment, and ought not to lessen his equal right to the personal estate, which he claimed upon different, principles. In this way, the law preserved the harmony of its system, and protected its favorite from consequent inconvenience.
 

 Very different is the rule with respect to the other children, and indeed with respect, to the heir at law himself, where he has been advanced with any thing hut land. The other children must account for land and chattels, when they claim distribution; the heir at lawT must account for personal property alone. With respect to this, therefore,' the object of the law is to establish an equality, because it is just, and because it does not interfere with any prior system of artificial policy. The degree in which this principle of equality is cherished by the law, as new cases have called for its decision, may be seen from the whole current of authorities. — (2
 
 P. Wms. 443.)
 

 
 *159
 
 Thus stood the law in this State, until the year 1784, a period when the minds of men had become considerably enlightened in the principles of society and the theory of'government
 
 •,
 
 when many of tiie pretensions of the latter, had been accurately investigated and traced back to their original sources, pride, vanity, the love of power, and all the lamentable imbecilities of our nature. , The Legislature of that day, felt the necessity of extirpating those anomalies in the law, which were utterly hostile to the growth of our infant republic; and they seem to have acted under the conviction, that the right of primogeniture was of the essence of a monarchical or aristocratical form of
 
 government;
 
 a contrivance instituted to perpetuate the grandeur of families, and to prevent that continual division of inheritances, by which something like a level is preserved among the citizens of a free State. Their steps were, at first, cautious and timid, perhaps from a fear of passing to the other extreme of too minute a subdhision of lands, and they accordingly gave the preference to the male issue. But, so far as they did advance, it was their design to render the division among the males, perfectly equal $ and it is remarkable, that in order to accomplish this object,' they have followed the language, as nearly as the subject would permit, of the act of distributions ; for they except from the right of division, such son or daughter as shall have a settlement of lands, of equal value, from the parent, and require them to bring it into Hotchpot, if they claim under the act. Afterwards, in 1795, they complete the system, by admitting females to an equal right of inheritance with males, subject to the same rules relative to advancements.
 

 . 'With these several acts before me, I cannot bring myself to doubt the design of the Legislature, either as to the disposition ■ of the real' or personal estate; that tlm first should be divided in equal portions amongst the. children, and the latter amongst the next of kin. The
 
 *160
 
 true interpretation of these acts appears to me to be this: By the act of 1766, a distinction is made in favour of
 
 ¥
 
 the eldest son, because he is heir at law, is, there-f0r6j privileged from bringing into Hotchpot any advancement of lands, that may have been made to him by Ms father; but, by the' other two acts, this distinctioa is abolished, and a benefit from it can no longer be claimed by the eldest son or any other child, because they are all placed on an equal footing. Therefore, if any one claim distribution of the personal estate, he must bring into the account whatever real estate his father has settled upon him, in order that the manifest - aim of the Legislature may be accomplished.
 

 I will not undertake to prove that the very words of the two latter acts authorise this construction, and I should perhaps hesitate to adopt it, as the true one, if the least doubt remained in my mind as to the policy of the law, or the meaning of the Legislature. In considering what answer can be made to these reflections, or what arguments can be adduced to prove that the children are not bound to bring in their advancements, nothing conclusive or satisfactory has occurred to my mind. If it be said, that the act of 1776 privileges the heir at law, and that by the subsequent acts all the children are made heirs at law, and therefore, all are privileged; the answer is, that the latter acts were passed for the very purpose of annulling that policy on which the claim of exemption is grounded by the first act
 
 •,
 
 and that
 
 to
 
 yield to the construction contended for, would have a direct tendency to revive and perpetuate all the evils of the ancient system. That when the reason ceases, the law itself ought to cease with it; and that when the Legislature seeks to effect by a statute an object of public utility, when the end of the act is evidently larger than the words, it is right and allowable so to construe it as
 
 to
 
 reach their design — (
 
 Vaugh. 172.)
 

 
 *161
 
 To the argument that no law since 1766, requires the eldest son to brine; his advancement into distribution, I would answer that tiie subsequent, laws put all the cinl-dren upon a looting of equality, with regard to the real estate ; but this equality cannot exist, if any one or more refuse to bring in their advancements.
 

 In whatever light this case has presented itself to my understanding, I am forced to the conclusion, that the lands given to them by the father of these parties, ought to be brought into the account upon the distribution of the personal estate.